UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | 3:20-CR-00086 (KAD) |
| | ) | |
| v. | ) | |
| | ) | |
| THOMAS LIBERATORE & | ) | MARCH 13, 2023 |
| PAUL PROSANO | ) | |

**MEMORANDUM OF DECISION**
**RE: MOTIONS FOR ACQUITTAL AND FOR A NEW TRIAL (ECF NOS. 238, 250 & 252)**

Kari A. Dooley, United States District Judge:

On June 17, 2020, a federal grand jury returned a Superseding Indictment charging Robert Rallo ("Rallo"), Thomas Liberatore ("Liberatore") and Paul Prosano ("Prosano") with a Hobbs Act Robbery involving Marco Jewelers in Stamford, Connecticut on March 28, 2020 (Count One)[1] and Interstate Transportation of Stolen Property on that same date (Count Three). Rallo and Liberatore were also charged with the firearm related murder of Mark Vuono, the owner of Marco Jewelers (Count Two).[2] Rallo pleaded guilty to these charges and Liberatore and Prosano proceeded to a jury trial. On December 19, 2022, the jury returned guilty verdicts against both Liberatore and Prosano on each count with which they were charged. Pending before the Court are Liberatore's and Prosano's motions for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29 or, alternatively, for a new trial pursuant to Rule 33. Both Defendants challenge the sufficiency of the evidence used to convict them. In addition, Liberatore challenges the Court's admission of the testimony of the Government's ballistics expert and, in light of this error, in the alternative, seeks a new trial. Because of the overlapping and interwoven nature of the arguments

---

[1] Prosano was charged as an aider and abettor in the robbery.
[2] Liberatore was charged as an aider and abettor in the murder.

presented, the Court issues a single memorandum of decision. For the reasons set forth below, Defendants' motions are DENIED.

**The Evidence at Trial[3]**

*Robbery of Marco Jewelers and Death of Mark Vuono*

Surveillance video[4] revealed that on March 28, 2020, two masked men entered Marco Jewelers on Sixth Street in Stamford, Connecticut shortly after 2:00 p.m. Each was carrying a bag. The first to enter the store retrieved a firearm from the bag he was carrying and pointed it at the store owner, Mark Vuono. The videos of the robbery reveal that the armed robber went into the back room of the store, where there was a safe and a workspace for the owner. The second robber then proceeded to methodically remove jewelry from the glass cases in the store showroom. After several minutes, the second robber, carrying both bags, exited the store.

While the second robber was stealing the jewelry, the armed robber placed his firearm on a chair in the back room. Mr. Vuono grabbed the gun and a struggle ensued between the first robber and Mr. Vuono. The struggle lasted for several minutes with both men clutching the firearm. Mr. Vuono was severely beaten, and eventually, the robber retrieved a separate gun (the owner's gun) from the safe in the back room and shot Mr. Vuono in the head. Thereafter, though not immediately, the first robber left the store.

The robbers are then captured on surveillance video walking south on Summer Street, and one robber is seen entering a black Jaguar.

---

[3] The Court does not attempt to identify all the evidence offered at trial but offers a summary of the evidence and the reasonable inferences to be drawn therefrom. In reaching its decision, the Court has considered the entire body of evidence submitted to the jury.

[4] The robbery was recorded by multiple surveillance cameras. Those recordings were seized the same day by responding law enforcement.

*The Arrest of the Defendants*

As detailed below, shortly after the robbery, law enforcement had identified a black Jaguar—with New York plates—to be a vehicle of interest. On March 31, 2020, having located the vehicle, law enforcement surveilled the Jaguar in Staten Island, New York. While the car was under surveillance, Prosano arrived at the Jaguar driving a BMW. Rallo was seen exiting the BMW and entering the Jaguar. As both cars pulled away from the scene, law enforcement activated lights and sirens to stop both vehicles. Both vehicles fled from law enforcement. As the BMW pulled away, a woman and a dog exited the moving vehicle on the passenger side. The woman was Paul Prosano's wife, Christine Prosano, and the dog was her pet. Eventually, the BMW was abandoned, and Prosano was located nearby and taken into custody. A subsequent search warrant for the BMW would result in the seizure of multiple pieces of jewelry which were identified as having been stolen from Marco Jewelers.

Not far away, the Jaguar was found damaged and parked perpendicular to the road—essentially blocking the road. A foot chase of Rallo ensued and ended in a nearby backyard where Rallo was taken into custody.

After she leapt from the BMW, Christine Prosano was tended to by other law enforcement officers. At that time, she was given a ride back to her home in Brooklyn where she gave consent to a search of the apartment she shared with Prosano. Therein, agents located and seized jewelry clearly identifiable as having been stolen from Marco Jewelers. They also seized handwritten notes regarding phrases and tips for committing a jewelry store robbery, i.e., "GPS TRACKING DEVISES INSIDE JEWLRY DISPLAY BOX REMOVE ALL JEWLRY QUICKLY AND DISCARD ALL TRAYS; SET OFF ALARM AND YOU DIE; PLACE ALL JEWELRY BOXES

IN SUITCASE—YOU HAVE 2 MINUTES OR YOU DIE; EVERYTHING IS INSURED DON'T BE A HERO."[5]

Almost immediately after Prosano and Rallo's arrests, law enforcement obtained an address at which Liberatore was believed to be located. The SWAT team made entry into the apartment in the early morning hours of April 1, 2020. Liberatore was found sleeping on a couch and he was removed from the apartment. While being arrested, Liberatore asked, in substance, "Did you get everybody?"

*The Black Jaguar/DNA Evidence*

Shortly after the robbery, a retired Stamford Police officer contacted the Stamford Police Department to report what he believed to be suspicious activity earlier that day in a Dairy Queen ("DQ") parking lot. At trial, the officer testified that he had seen three men in a black Jaguar with New York plates in the parking lot. He found it suspicious that the car was backed into its parking space (where the back of the car was next to a fence) and that they were changing their clothes.

Law enforcement obtained surveillance video from the DQ parking lot and confirmed what had been reported. The black Jaguar arrived at the parking lot at approximately 12:37 p.m. and remained for almost one hour. The occupants can be seen changing clothes and positions within the car. One occupant, bearing a significant resemblance to Prosano, is also seen purchasing two Cherry Cokes in an adjacent store, and the other two occupants are observed discarding trash in the parking lot bins.

The Government retrieved trash from the parking lot and swabbed it for DNA profiles. The state of Connecticut forensic laboratory then compared the profiles recovered to those of Rallo, Liberatore and Prosano. There were multiple items on which the Defendants' DNA profiles were

---

[5] The handwriting on this evidence was identified by Christine Prosano as belonging to Prosano.

very likely present. By way of example only, a DNA profile retrieved from the cap of a Cherry Coke bottle was 100 billion times more likely to have originated from Liberatore and one unknown individual rather than two unknown individuals. A DNA profile retrieved from a food wrapper revealed four contributors. Assuming four contributors, one of the profiles was 100 billion times more likely to have originated from Rallo and three unknown contributors than from four unknown contributors. Another profile on the same wrapper was 63 billion times more likely to have originated from Prosano and three unknown contributors than from four unknown contributors.[6] And of particular significance, the Government also swabbed Mark Vuono's clothing for DNA. The profile of the DNA retrieved from the front lower portion of Mr. Vuono's pants had three contributors. Analysis determined that it was 100 billion times more likely that the DNA originated from Rallo, Vuono and an unknown individual than from Vuono and two unknown individuals.

Surveillance video showed the black Jaguar exiting the parking a lot at 1:30 p.m. The robbery occurred approximately 30 minutes later. Just before the robbery, the robbers are captured by surveillance cameras walking north on Summer St. and turning toward Marco Jewelers on Sixth Street. The robbers are of the same general height and build as the people in the Dairy Queen parking lot.

*Locating the Gun*

On November 20, 2020, well after Prosano had been arrested, charged with the robbery and detained, Christine Prosano testified that she was preparing to move from her Brooklyn apartment. When she climbed up a step ladder to retrieve items which sat atop a china cabinet, she found a firearm hidden behind a false front on the top of the cabinet. She immediately called FBI Special Agent Pappas, the case agent on the robbery investigation. Special Agent Pappas retrieved

---

[6] Video surveillance from a McDonald's in Greenwich, Connecticut from the morning of March 28, 2020 show Rallo and Liberatore inside the McDonald's ordering food.

the gun and testified that it was swabbed for DNA. Lab personnel testified that the top of the gun revealed the very likely presence of Mark Vuono's DNA. This testimony and finding are consistent with the video surveillance which showed Mr. Vuono grabbing the top of the barrel of the firearm during the struggle. Lab personnel further testified that the handle of the gun revealed the very likely presence of Prosano's DNA.

*Robbery of Byram Jewelers*

Ballistics expert Rachel Beninati testified that the gun was also test fired and that the bullet discharged from the firearm was forensically matched to a bullet recovered from the scene of an armed jewelry store robbery at Byram Jewelers in Greenwich, Connecticut that had occurred just ten days before the robbery of Marco Jewelers. The jury heard substantial evidence that Liberatore committed the Byram Jewelers robbery.

This evidence included surveillance footage, from outside the store, which shows the perpetrator parking a uniquely colored car, and surveillance footage from inside the store, which showed the robber pulling a gun from a bag and pointing it at the store owner. The robber then used the gun to smash the glass in one of the jewelry cases.[7] Liberatore's parole officer (though not identified as such at the trial) identified Liberatore as the person seen in the surveillance video. The jury further heard the testimony of a witness who gave the uniquely colored vehicle to Liberatore purportedly for a test drive, and who was given Liberatore's Connecticut license at the time he did so. The witness further testified that the car was never returned and was eventually reported stolen. Moreover, DNA found within the uniquely colored car, after it was located by law enforcement, was at least 100 billion times more likely to have originated from Liberatore and two

---

[7] The jury heard evidence from which it could conclude that the force of smashing the glass discharged the bullet recovered at the scene.

unknown individuals than from three unknown individuals. Thus, the jury heard evidence that the gun found by Christine Prosano tied both Prosano and Liberatore to the Marco Jewelers robbery.

*Christine Prosano's Testimony*

Christine Prosano testified that Prosano knew "Bobby" Rallo and "Tommy" Liberatore from the past. In March 2020, Liberatore had even stayed on Prosano's boat at a Brooklyn marina.

On March 27, 2020, the day before the robbery of Marco Jewelers, Rallo called Prosano and told him he was outside of Prosano's Brooklyn apartment. Christine and Prosano, who were out at the time, drove home where Rallo was waiting in front of the apartment. Christine dropped off Prosano and went to find parking but was unsuccessful. When she returned to the apartment, Prosano said that Rallo had a painting job for him in Staten Island the following day (March 28, 2020) and that Christine should wake him up early. Rallo left driving his black Jaguar.

The following day, at 7:30 a.m., Rallo picked up Prosano. Christine told him not to go, to come back to bed. She was very skeptical that he was going to a painting job with Rallo. When Christine got up later that morning, she realized that Prosano had left his phone at home in the kitchen. When she was trying to do her taxes later in the day, she used Prosano's phone to contact Rallo in an effort to reach her husband. Her texts went unanswered but eventually Rallo answered the phone.

Christine had no idea where they were, and Prosano did not come home that night. However, later in the evening, she received a call from Rallo, which resulted in her calling 911 and asking an ambulance to be sent to the Richmond Hotel in Staten Island. At trial, she identified security video from the hotel as showing her husband being taken out of the hotel by emergency services. In the video, Prosano is wearing only one shoe.

The next day, March 29, 2020, Prosano arrived home in the morning. Consistent with the Hotel Richmond video, he was missing a shoe and was wearing a hospital gown over his jeans. He was in and out of the apartment during the day. That evening, around midnight, Christine saw that he had a lot of jewelry, which did not belong to her or to Prosano. He instructed her to get him a box for the jewelry, which she did. Later, she saw him place the box in his side of the armoire in their bedroom.[8]

*Phone Data*

The evidence also included cell phone tracking data that showed Rallo's and Liberatore's cell phones traveling from Brooklyn, New York to Stamford, Connecticut and then from Stamford to Staten Island in the immediate aftermath of the robbery. The three Defendants are then tracked to and seen on surveillance video at the Richmond Hotel in Staten Island.

The evidence also included evidence from the content of the Defendants' phones, which included searches of locations in and around the Stamford area, to include a location a few blocks south of Marco Jewelers, the direction from which the robbers are seen approaching the store. The phone evidence also supports the inference that Prosano (who did not have his phone with him), as the getaway driver, was in constant contact with Liberatore or Rallo during the robbery as Rallo's and Liberatore's phones were connected to each other during the precise time frame during which the robbery occurred. Prosano's phone also contained searches for news articles on the Byram Jeweler's robbery from the day immediately after the robbery. Finally, the phone records also revealed a significant number of calls or texts among Rallo, Liberatore and Prosano in the days and weeks leading up to the robbery.

---

[8] As discussed above, this jewelry was seized by law enforcement on March 31, 2020 when Christine Prosano gave consent to search the apartment following the arrests of Prosano and Rallo.

From this evidence, the Government argued that the armed robber who shot and killed Mark Vuono was Rallo;[9] the second robber was Liberatore; and Prosano was the getaway driver.

**Motion for Judgment of Acquittal**

The Court turns to the Defendants' sufficiency arguments. There is no dispute that the evidence established that Marco Jewelers was robbed at gunpoint and that this robbery hindered or impacted interstate commerce. Nor is there any dispute that Mark Vuono was shot and killed during the robbery. There is no claim that the jewelry stolen did not travel in interstate commerce or that it was not valued at more than $5,000.00. Liberatore and Prosano move for a judgment of acquittal on the grounds that the Government failed to prove beyond a reasonable doubt that they committed the offenses as charged. Their arguments turn on the assertion that the Government did not sufficiently identify Liberatore as one of the robbers or Prosano as the getaway driver.

"Under Rule 29, a district court will grant a motion to enter a judgment of acquittal on grounds of insufficient evidence if it concludes that no rational trier of fact could have found the defendant guilty beyond a reasonable doubt. A defendant who challenges the sufficiency of the evidence to support his conviction bears a heavy burden. Not only must the evidence be viewed in the light most favorable to the Government and all permissible inferences drawn in the Government's favor, but the jury verdict must be upheld if *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Jackson*, 335 F.3d 170, 180 (2d Cir. 2003) (citations omitted; ellipses omitted; internal quotation marks omitted).

When evaluating the sufficiency of the evidence, courts must "bear in mind that the jury's verdict may rest entirely on circumstantial evidence." *Id*. "When making a case based on

---

[9] Rallo pleaded guilty to the charges against him on April 5, 2022 and was sentenced on March 1, 2023.

9

circumstantial evidence, the government need not exclude every reasonable hypothesis other than that of guilt." *United States v. Guadagna*, 183 F.3d 122, 130 (2d Cir. 1999) (quoting *Holland v. United States*, 348 U.S. 121, 139 (1954)). Moreover, "it is the task of the jury, not the court, to choose among competing inferences." *United States v. Martinez*, 54 F.3d 1040, 1043 (2d Cir. 1995). Rule 29 does not provide the trial court with an opportunity to "substitute its own determination of the credibility of witnesses, the weight of the evidence and the reasonable inferences to be drawn for that of the jury." *United States v. Mariani*, 725 F.2d 862, 865 (2d Cir. 1984); *accord United States v. Facen*, 812 F.3d 280, 286 (2d Cir. 2016). Thus, "the court may enter a judgment of acquittal only if the evidence that the defendant committed the crime alleged is nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt." *Guadagna*, 183 F.3d at 130 (citation omitted; internal quotation marks omitted).

With these legal principles in mind, the Court turns to the merits of the Defendants' motions.[10] The Court agrees with the Government that there was well more than sufficient evidence for the jury to conclude as it did.

As detailed above and in the trial record, extensive surveillance footage, DNA evidence, and cell site evidence established that Rallo, Liberatore and Prosano were together in Stamford, Connecticut,[11] a few blocks from the site of the robbery within minutes of the robbery. They were identified as driving a black Jaguar. Surveillance footage from Stamford tracked one of the robbers to the black Jaguar after the robbery when he was picked up a few blocks south of Marco Jewelers on Summer Street. Rallo's DNA profile was found on Mark Vuono's clothing.

---

[10] Although Liberatore challenged the Court's jury instruction regarding aiding and abetting the murder of Mr. Vuono, the pending motions are not premised upon any claim regarding the jury instructions. The Court does not therefore set forth herein the elements of the offenses on which the Defendants were convicted. The Court has, however, reviewed the sufficiency of the evidence in the context of those elements as charged to the jury.

[11] They were not at a painting job in Staten Island, as had been represented to Christine Prosano.

Three days later, Rallo was seen arriving at the Jaguar's location in Staten Island with Prosano. Rallo entered the Jaguar and proceeded to leave the scene. When law enforcement attempted to stop Rallo, he fled until he crashed the Jaguar. When law enforcement attempted to stop Prosano, he too fled, failing even to slow down as his wife leapt from the moving vehicle with her beloved pet. Jewelry from Marco Jewelers was recovered from Prosano's BMW and apartment. Shortly thereafter, when Liberatore was arrested, he queried "Did you get everyone?"

The gun used in the Marco Jewelers robbery (which had Mr. Vuono's DNA on it) was recovered from Prosano's apartment and very likely had Prosano's DNA profile on it. The same gun was ballistically linked to the firearm used by Liberatore to rob Byram Jewelers on March 18, 2020.

This evidence, along with the additional evidence detailed above, is sufficient to establish, and a rational trier of fact could have concluded, that on March 28, 2020, Rallo, Liberatore and Prosano, acting together, committed the armed robbery of Marco Jewelers. They travelled from New York to Connecticut; they waited in a nearby parking lot; and they prepared for the robbery by having Prosano take over driving responsibilities and by changing their clothes. Shortly after leaving the DQ parking lot, Rallo and Liberatore walked north on Summer Street, crossed Sixth Street, entered the store and committed the robbery. Rallo, armed with a firearm, beat and eventually killed Mr. Vuono, leaving his DNA profile on the victim. Liberatore left the store, retreated south on Summer St. and shortly thereafter followed by Rallo to the black Jaguar. The Jaguar then traveled directly to New York, where ultimately much (though not all) of the stolen jewelry was recovered a few days later.

In sum, viewing the evidence in the light most favorable to the Government and drawing all permissible inferences in the Government's favor, a rational trier of fact could have found the

11

essential elements of each crime beyond a reasonable doubt. Defendants' motions for judgment of acquittal are DENIED.

**Motion for New Trial**[12]

Defendant Liberatore moves for a new trial on the ground that the Court should not have admitted the testimony of ballistics expert Rachel Beninati.[13] The Government contests this claim of error.

Rule 33 provides that the district court may "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). "Generally, the trial court has broader discretion to grant a new trial under Rule 33 than to grant a motion for acquittal under Rule 29, but it nonetheless must exercise the Rule 33 authority 'sparingly' and in 'the most extraordinary circumstances.'" *United States v. Ferguson*, 246 F.3d 129, 134 (2d Cir. 2001) (quoting *United States v. Sanchez*, 969 F.2d 1409, 1414 (2d Cir. 1992)). "In evaluating a Rule 33 motion, the court must 'examine the entire case, take into account all facts and circumstances, and make an objective evaluation,' keeping in mind that the 'ultimate test' for such a motion is 'whether letting a guilty verdict stand would be a manifest injustice.'" *United States v. Alston*, 899 F.3d 135, 146 (2d Cir. 2018) (quoting *United States v. Aguiar*, 737 F.3d 251, 264 (2d Cir. 2013)). "In other words, there must be a real concern that an innocent person may have been convicted" for the ordering of a new trial to be appropriate. *United States v. Snype*, 441 F.3d 119, 140 (2d Cir. 2006) (alteration omitted; citation omitted; internal quotation marks omitted). And, again, only in "exceptional

---

[12] Prosano does not identify any alternative bases upon which a new trial should be granted other than the claim that the evidence was insufficient and, if his argument is not adequate for the entry of a judgment of acquittal, it should be considered as warranting a new trial.

[13] Ms. Beninati was accepted by the Court as a ballistics expert under Federal Rule of Evidence 702 over the objection of Liberatore.

circumstances" should the jury's credibility assessment and guilty verdict be discarded. *Sanchez*, 969 F.2d at 1413.

> With respect to Ms. Beninati, Federal Rule of Evidence 702 provides:
>
> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

*Id; see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 138 (1999) (finding that the law grants the trial judge broad latitude to determine which *Daubert* factors are reasonable measures of reliability in each case); *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265 (2d Cir. 2002) ("in analyzing the admissibility of expert evidence, the district court has broad discretion in determining what method is appropriate for evaluating the reliability under the circumstances of each case"); *U.S. v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007) ("A decision to admit scientific evidence is not an abuse of discretion unless it is manifestly erroneous.") (citations omitted).

At trial, the Government elicited the education, training and experience of Ms. Beninati. Her testimony included that she had spent at least 400 hours under a microscope comparing fired bullets, that she took multiple trainings and competency tests, that she was approved by a lab director to conduct case work, and that she had conducted firearms analyses over 2,000 times. Counsel for Liberatore undertook additional voir dire of the witness, which revealed certain professional accolades she had not yet achieved, such as joining a professional ballistics organization, presenting at conferences, authoring peer reviewed articles, or teaching in her field at any university. Notwithstanding some of the experiential deficits uncovered, the Court concluded that she was qualified to offer the opinion for which she had been disclosed. Ms.

Beninati testified that the bullet recovered from the Byram Jewelers robbery matched the bullet test fired from the gun recovered from Prosano's apartment. She provided a detailed explanation for her opinion and testified that her work was independently verified by a lab supervisor. Ms. Benanti was thereafter subject to a vigorous cross-examination.

As the admission of Ms. Beninati's testimony was, in the Court's view, well within the Court's discretion, its admission does not provide a basis for a new trial. And for the reasons articulated above with respect to the motions for judgment of acquittal, the Court is similarly unpersuaded that the motion for a new trial is warranted based upon any perceived insufficiency of the evidence. Accordingly, the motions for a new trial are DENIED.

**Conclusion**

For the reasons set forth herein, Defendant Liberatore's Motion for Judgment of Acquittal and for New Trial (ECF Nos. 238, 250) are DENIED, and Defendant Prosano's Motion for Judgment of Acquittal or a New Trial (ECF Nos. 238, 252) are DENIED.

**SO ORDERED** at Bridgeport, Connecticut this 13th day of March 2023.

 /s/ Kari A. Dooley
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE